Michael R. Boyd sued M. Kimerling and Sons, Inc. (Kimerling), to recover benefits under the Workmen's Compensation Act of Alabama. Boyd alleges that subsequent medical treatment he received between 1986 and 1991 was related to his occupational injury of 1979, which occurred while working for Kimerling. Following an ore tenus proceeding, the trial court denied his recovery. Boyd appeals.
We initially note that the standard of review in workmen's compensation cases is two-pronged. This court must first look to see if there is any legal evidence to support the findings of the trial court. If such evidence is found, we then must determine whether any reasonable view of that evidence supports the trial court's judgment. Ex parte Eastwood Foods,Inc., 575 So.2d 91 (Ala. 1991).
In this case, the trial court found that Boyd failed to establish the causal connection between the initial compensable injury and the subsequent injury. Boyd has the burden to establish a causal connection between the work and the injury. Houston v. Louisiana Land Exploration Co.,459 So.2d 912 (Ala.Civ.App. 1984). The trial court found that Boyd was not entitled to any benefits. The only issue presented for our review is whether the trial court erred in finding that Kimerling was not responsible for medical expenses incurred by Boyd during and after 1986.
The record reveals the following background facts: From December 1978 through March 1980 Boyd was employed by Kimerling in the parts department. In December of 1979, Boyd was injured while lifting metal crusher blades. He suffered a herniated disc, for which he underwent surgery in 1980. The medical bills were paid by Kimerling. Boyd received temporary total disability benefits for 13 weeks and 3 days in the amount of $1,477.10. Boyd reached maximum medical improvement, was given a permanent partial disability rating, and was released to return to work. On the day he returned, his employment was terminated by Kimerling.
From 1981 through 1983, Boyd worked for LaCole Company, delivering flowers. From 1983 through 1985, Boyd was employed by the Crown Pontiac dealership in its parts department. In 1985, Boyd went to work for Classic Insulation. In November 1985, Boyd returned to Crown Pontiac and was in charge of routing truck drivers.
From 1980 through 1986, Boyd was able to work without any medical treatment. In July 1986, while employed in the parts department at Crown Pontiac, Boyd began to have trouble with his back as a result of twisting and lifting at work. He was treated from April 1986 through December 1986 by Dr. Jeanne C. Cabral, a chiropractor. In May 1990, he was treated by Dr. Steven Nichols, an orthopedic surgeon. On December 28, 1990, Boyd was treated by Dr. W. Carvel Woodall, a neurosurgeon, who, thereafter, surgically removed disc fragments from his back. The major medical insurance carrier for Crown Pontiac paid Boyd's medical bill incurred as a result of the surgery in 1991, with the reservation that if Boyd's medical condition was determined by the court to be related to the 1979 injury, it would be reimbursed. *Page 713 
Dr. Cabral testified in her deposition that in April 1986, Boyd filled out and signed a confidential patient information form. In response to the question "date symptoms appeared or accident happened," Boyd answered "1978." In response to the question: "ever had same or similar condition," Boyd responded that he had and that the condition "started in 1978 when moving concrete blocks." Dr. Cabral testified that, to a reasonable degree of medical certainty, she would relate his back problems to lifting concrete blocks in 1978. Dr. Cabral diagnosed Boyd with a pinched nerve in his spine and a spasm of the musculature due to disc degeneration.
Dr. Steven Nichols, an orthopedic surgeon, testified in his deposition that he first treated Boyd in May 1990. He diagnosed Boyd with a recurrent lumbar disc herniation. Nichols testified that there is no way to say with a reasonable degree of medical certainty when Boyd's back problems began. He testified that Boyd's back problem was related to his surgery in 1980 and whatever injury precipitated that surgery.
Dr. Woodall testified in his deposition that he first examined Boyd in December 1990. His exam revealed a herniated disc. In January 1991, Dr. Woodall surgically removed disc fragments. He testified that it was a continuation of the same problem that resulted in an operation in 1980. Dr. Woodall stated that he did not know how Boyd received the back injury that led to the surgery in 1980, but that lifting concrete blocks could cause a ruptured disc.
A review of the record reveals that the trial court did not commit error in finding that the surgery of 1991, although at the same level in the back, was not caused or connected to the surgery in 1980. The evidence revealed that Boyd originally injured his back while working at Birmingham Electric Battery Company in 1978. At the time, he received medical treatment, which was paid for by his employer, and he was paid temporary total disability while unable to work. In 1986, Boyd filled out a questionnaire, in his own writing, in which he admits that he injured his back in 1978 lifting concrete blocks. Boyd failed to present sufficient evidence that his back injury arose out of his employment with Kimerling. Accordingly, we find that there was legal evidence to support the finding of the trial court, and that a reasonable view of such evidence supports the trial court's judgment. Eastwood Foods, supra. The judgment is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.